Johnson C. J. This was a suit instituted on the Chancery side of the Circuit Court of Conway county, by Mary E. Menifee, who represents herself as the widow of Nimrod Menifee, deceased, the object of which was to have her dower assigned in the estate of her deceased husband. .The first point made', and one that meets us at the threshhold, relates to the jurisdiction of the Court.1 It is contended that since the adoption of the State Constitution the jurisdiction of questions of dower is confined solely and exclusively to the several Probate Courts. In support of this position the tenth section of sixth article of the Constitution is referred to and relied upon. This section of the Constitution declares that4‘there shall be elected by the Justices of the Peace of the respective counties, a presiding Judge of the County Court, to be commissioned by the Governor, and hold his office for the term of two years and until his successor is elected and qualified. He shall in addition to the duties that may be required of him by law as a presiding Judge of the County Court, be a Judge of the Court of Probate, and have such jurisdiction in matters relative to the estates of deceased persons, executors, administrators and guardians, as may be prescribed by law, until otherwise directed by the General Assembly. ’ Under this constitutional provision, the Leg ¶ islature passed an act upon the subject'of dower, the 32d section of which provides that, “if dower be not assigned to the widow within one year after the death of her husband, or within three months after demand made therefor, she may file in the Court of Probate, with the Clerk thereof, her petition setting forth what lands there are, their description, and probable value, and what slaves and their description and probable value, of which she claims dower. ’ ’ Dower may be recovered by bill in equity, as well as by action at law. The jurisdiction of Chancery over the claim of dower, has been thoroughly examimed, clearly asserted, and definitely established. It is a jurisdiction concurrent with that of law j and when the legal title to dower is in controversy, it must be settled at law; but, if that be admitted and settled, full and effectual relief can be granted to the widow in equity both as to the assignment of dower and the damages. The equity jurisdiction was so well established and in such exercise in England that Lord Loughborough said “that writs of dower had already gone outof practice.” 4 Kent's Com. p. 71 and 2, and the authorities there cited. In addition to the legal remedies at law and in equity, the surrogates, in New York, are empowered and directed upon the application of either the widow, or of the heirs, or owners, to appoint three freeholders to set off by admeasurement the widow’s dower. N. Y. Revised Statutes, Vol. 2,488,492. Coates v. Churer, 1 Coto. 460. We presume it will not be denied that Chancery had jurisdiction of dower before the adoption of the Constitution oí Arkansas, and if so, it' is equally clear that it still retains it; as there is nothing in that instrument repugnant to or inconsistent with it. The jurisdiction was conferred upon the Probate Court as a matter of convenience, and with a view to despatch, but of course to be exercised alone in such cases as were plain and simple in their character, and in which that Court could afford full and complete relief. The remedy given by the Constitution is clearly cumulative and was never designed to impair or in any manner affect the ancient jurisdiction of the Courts of Chancery. It is clear from the facts of this case, as disclosed by the bill, that the Probate Court could not afford the Relief sought. . It appears from the bill that a complicated account is to be settled between the parties, that an irregular proceeding in another Chancery cause is necessary to be passed upon and confirmed, and that a portion of the land of which the intestate died seized, was situated in another and different county from that in which this suit was instituted. The complicated nature of the matters in controversy could not be settled in any other fortun, and on this ground alone' Chancery has jurisdiction. 5 John. Ch. Rep., 482, Swaine v. Perine. But for the Statute declaring that tire Probate Court may entertain jurisdiction of dower, the Courts of equity would have had complete, unquestioned, and sole jurisdiction. Does the Statute which gives the Courts of law cognizance in such cases negative and exclude the Courts of equity from their accustomed and appropriate jurisdiction? It seenrs more proper to say, that as the Statute has not negatived the former jurisdiction of Courts of equity, it has done no more than to give to tbe Courts of law a concurrent, not an exclusive jurisdiction. We are clear therefore that no doubt can exist upon the subject of jurisdiction. Having thus determined the question of jurisdiction, we will now take up the several errors in the order in which they are stated. The first error complained of is that “the Circuit Court adjudicated and decided that the said Mary E. Menifee, the rvidow of Nimrod Menifee, deceased, had by larv a right of dower in money arising from sales of the personal estate of her deceased husband, made by the administrators of said estate, and is entitled to one-third part thereof absolutely as her dower in such personal estate; and decreed that such administrators should pay the same to her.” The argument in support of this assignment of error is that the Avidow’s right of doAver attaches to, exists in, and must be taken out of, the specific thing of which the husband Avas seized during the coverture, whether lands, slaves, or other personal property, and may be recovered thereout, into Avhose possession soever the same may have passed, but cannot in any instance be recovered out of the moneys received upon the sale of such estate, whether real or personal, or made by the heirs, or executor, or administrator. The 20 section of the 52 ch., of the Revised Statutes declares that aAvidoAV shall be entitled, as a part of her dower to the one-third part of the slaves Avhereof the husband died seized or possessed, during her natural life, and one-third part of the personal estate, in her own right. This Court in the case of Hill's Ad'rs v. Mitchell et al, 5 Ark. Rep. 612, holds that “these words create a positive grant, giving dower in the slaves during her natural life, and in the personal estate unconditionally. She holds the slaves in the same manner as she does the realty, and after her death they go to the heir or devisee, and the personal estate she takes in her own right absolutely. Her dower in all these three kinds of estate is given by the same or similar terms, and stands upon the like principle. She is declared to be endoAved of slaves and personal estate in the same manner as of lands. It is admitted that her dorver in lands is independent of the rights of creditors, and this being the case, if she takes the slaves and personal estate in the same manner, must she not also hold them by way of lien upon the estate of her husband? 'Dower is created by law, and it certainly is competent for the Legislature to enlarge or limit the estate. When they speak of dower in slaves and personal estate they mean precisely the same thing, as to the vested rights of the wife, as they do in reference to land. They have enlarged the common law definition of the term dower and made it embrace slaves and personal estate; and if she is endowed of these she must hold them as a lien created by law, of which she cannot be divested by other accruing rights. Now, the interest of dower is a vested interest by law, upon the marriage, and although there is no express provision in the Statute declaring that she takes slaves and personal estate against creditors and purchasers, still their being dower gives her that preference.” It is also held in the same case, at p. 617, that “upon the death of the intestate the personal property goes immediately into the hands of the administrator, and. he holds that part which is tangible and corporeal as trustee for the widow, until her dower is assigned in it. . The widow’s right of dower is not defeated by the administrator’s having possession of the personal estate, for he takes the property that belongs to her as trustee and holds it for her benefit.” We will now proceed to apply the principles here laid down to the case under consideration. In the case of Oliver and others v. Piatt, 3 Howard's S. C. Rep., Mr. Justice Stout, in delivering the opinion of the Court, said, “It is a clearly established principle in equity jurisprudence, that whenever die trustee has been guilty of a breach of the trust and has transferred the property by sale or otherwise to any third person the cestui que trust has a full right to follow such property into the hands of such third person, unless he stands in the predicament of a bona fide purchaser, for a valuable consideration, without notice; and if the trustee has invested the trust property or its proceeds, in any other property into which it can be distinctly traced, the cestui que trust has his election either to follow the same into the new investment, or to hold the trustee personally liable for the breach of trust.” True it is, that this Court in the case of Hill's Administrators v. Mitchell et al. already referred to, held that “the wife’s dower of the personal property, like that of the land, and slaves, must be carved out of the specific estate of which the husband was seized at the time of his death, and that if she has been deprived of it as the lien attaches to the property, it can be followed wherever it may be found, and subjected to her claim unless by her own laches she has abandoned or waived her right.” This was not intended to convey the idea that she was confined to the specific thing, and that she was bound to pursue it, or lose her rights. The whole scope of it was to show what was meant by the term “personal estate” as used in the Statute, tod to distinguish it from mere choses in action, which are but evidences of debt due the husband, and which are not corporeal and tangible property, and over which the husband does not ex-' ercise dominion at the time of his death. If the law did not hold the administrator personally responsible in case he should waste or convert the personal estate, the widow’s share of that portion of the estate might and doubtless would, in many instances, be rendered wholly unavailing to her. Administrators would be placed in afar better situation than any other class of trustees, as they would have it in their power to waste or convert to their own use a large proportion of the trust fund, and to set the cestui que trust at defiance. It is only necessary to state such a proposition to see its utter fallacy and ahsurdity. The second error is that “the Circuit Court adjudicated and decided that the said Mary E. Menifee, as widow of Nimrod Menifee, deceased, is by law entitled as dower to the one-third part of the rents of the real estate of which said Nimrod died seized, exclusive of the principal dwelling and farm occupied by him at the time of his death, and also of the hire of the slaves of which he died seized, in the hands of the administrators of his estate; which rents and hire accrued after his death; and adjudged and decreed that said administrators should pay the Same to said Mary as parcel of her dower in and of the estate of her said husband.” As to the account against the heir for mesne profits the widow is entitled to the same from the time her title accrues, and unless some special cause be shown courts of equity carry the accounts back to 'the death of the husband. 4 Kent’s Com., p. 70. Oliver v. Richardson, 9 Ves. 222, also Swaine v. Perine, 5 John’s Ch. Rep. 482. But the 139th section of the administration law provides that “until the widow’s dower be apportioned, the Court shall order such sum to be paid to her out* of the hire of the slaves, and the rent of the real estate, as shall be in proportion to her interest in the slaves, and the real estate.” This section admits of but one interpretation, and that is that the sum to be paid to her out of the hire of the slaves and the rent of the real estate is to be considered and received by her in lieu of her dower interest. .This is not to be so construed as to impair in any manner the title to the specific property, but simply to deprive her of the accruing profits up to the time of the actual assignment. If the 18th section of the dower act, which provides that “If the dower of any widow is not assigned and laid off to her within two months after the death of her husband, she shall remain in and possess the mansion or chief dwelling house of heríate husband together with the farm thereto attached, free of all rent until her dower shall be laid off and assigned to her,” stood alone, there would be at least a possibility to doubt whether the provision made in it was designed as a substitute for the proceeds of her dower interest up to the time of its actual assignment 5 but when the section referred to in the administration law is taken in connection with it, we think that such was the intention of the Legislature is clear and conclusive. These statutes we think furnish a good. and satisfactory reason why a court of equity would not carry the account back to the death of the husfeand, unless it should appear that the widow had not received such sum out of the hire of the slaves and the rent of the real estate as shall be in proportion to her interest in the slaves and the real estate. The record wholly fails to show that she has received either the one-third of the rents and profits of the real estate and slaves, or such sum out of the hire of the slaves and the rent of the real estate, as would be in proportion to her interest in the slaves and real estate. In the absence of such showing, we think there can be no good reason why the accounts should not be carried back to the time of the death of the husband. There is no error therefore in this branch of the decree. But it is contended that she is not thus entitled, in addition to the mansion and farm of her late husband. The statute provides that a widow may tarry in the mansion or chief dwelling house of her husband for two months after his death, whether her dower be sooner assigned her or not, without being liable for any rent Tor the same; and in the meantime she ‘shall have a reasonable sustenance out of the estate of her husband; and that if the dower of any widow is not assigned and laid off to her within two months after the death of her husband; she shall remain in and possess the mansion or chief dwell-ling house of her late husband together with the farm thereto attached; free of all rent; until her dower shall be laid off and assigned to her. It is the duty of the heir at law of any estate of -which the widow is entitled to dower, to lay off and assign such dower as soon as practicable after the death of the husband of such widow. The third error assigned is that the Circuit Court decided that the said Mary E. Menifee was the rightful and equitable owner of certain cattle given to and'received into her actual possession during her co-verture, and should retain and keep them as her absolute property against all claims of the administrators, heirs, distributees, and creditors, of the estate of her deceased husband. The propriety of the decree upon this branch of the cause will necessarily depend upon the evidence. The answer of Mrs. Menifee to the interrogatory in the cross bill touching the matter of the cattle is, that she had a Durham heifer in her own right, and that she was advised the Supreme Court of the State had so decided; that said heifer had then increased three in number, and that she supposed the four to be of about the-value of forty dollars. She at the same time denied that they were subject to the debts of the deceased, or to distribution, but insisted that they were her own individual property. Thomas S. Haynes testified that Doctor Menifee at the time of his death had a Durham cow and calf, but that he did-not know their value. Alexander Mink also testified that Menifee had a Durham cow and calf at the time of his death, but that he did not know her value, but that at Menifee’s sale a cow inferior to her was sold for a hundred or a hundred and five dollars. The Court excluded the evidence of Mink as to the value of the cow by comparison with others at Menifee’s sale. The witness then being asked what the cow was then worth, said he did not know. This was all the evidence in-relation to the Durham cattle. The answer of Mrs. Menifee must be considered as true unless it has been overturned either by two witnesses or by one witness and corroborating circumstances. Now it is not perceived that the testimony of the appellants’ witnesses impeaches in the most remote degree the answer of the appellee. She answered that she had a Durham heifer in her own right; one of the witnesses introduced to defeat her claim stated that Doctor Menifee, at the time of his death, had a Durham cow and calf, but that he did not know their value. The other stated that he had a Durham cow and calf at the time of his death; that he did not know her value, but that at Meni-fee’s sale a cow inferior to her was sold for a hundred or a hundred and five dollars; and being asked what she was then worth, said that he did not know. This testimony could not possibly affect the answer; as, even supposing it had established the value of the cattle, there was not a particle of evidence going to show that she had retained or converted them to her own use. It is wholly immaterial how many Durham cattle the intestate had in his possession at the time of his death, unless it appeared in proof that the widow had either-kept or converted them to her own use. Upon this essential point the witnesses are wholly silent. Whether the cattle in controversy have already been decided by this Court to be the property of the widow or not, we do not judicially know, but we are fully satisfied from the facts as disclosed in this case that her title is clear and unquestionable. The fourth error complained of is that the Circuit Court decided that Mrs. Menifee could rightfully and lawfully keep and hold a certain gold watch given to her by her husband, the said Nimrod Meni-fee, upon the payment by her to the administrators of his estate of the value thereof as ascertained and fixed by said Court from testimony adduced in respect thereto. A material part of the suit was for the adjustment of accounts both of the original bill and the cross bill of the administrator, and we therefore consider that all the matters set up in the bills and answers were rightfully passed upon by the Court. The appellants themselves drew the watch into controversy, and they cannot complain because the Court adjudicated upon it. The appellants expressly called upon the appellee to answer and say whether the intestate at the time of his death was not possessed of a gold watch, and if so, to state its value, and also whether she had not retained and still retained it in her possession. She answered that she still retained the watch referred to, and supposed its valué to be from sixty to eighty dollars. It certainly would not be seriously contended that the appellants could recover the specific property by inserting the interrogatory in a cross bill, and they having succeeded in setting off the value of the watch against her demand, there is no ground left for complaint. The fifth cause assigned for error, is that the Circuit Court decided that by law the heirs at law of the said Nimrod Menifee, deceased, were entitled to the remaining two-thirds of the rents of tire land and hire of the slaves of which he was seized at the time of his death, which has accrued since his death and been received by the said administrators of his estate and remains in their hands after the payment of th'e other one-third part thereof to the widow as parcel of her dower in and out of the estate of her said husband. This part of the decree is not for the distributive share of the heirs after the assignment of the dower and the payment of debts, but seems to have been based upon the supposition that they were entitled to the possession of the land and slaves from the death of the ancestor, and that they were as a necessary consequence entitled absolutely and in their own right to all the rents and profits which had or might accrue up to the time that the administrator should obtain an order from the Probate Court to sell or rent the one, or hire or sell the other. If that portion of the opinion in the case of Hill’s administrators vs. Mitchell et al., already referred to, which bears upon this branch of the decree, should be recognized as authoritative and binding as a judicial sentence, it is possible that such a construction might be placed upon it as to warrant the decree in favor of the heirs. The Court in that case argued that because the law cast the descent of lands and slaves upon the heir and also required him to assign dower, that therefore he was entitled to the immediate possession. We do not conceive the facts involved in that case raised the question now under discussion, and as a matter of course all that is there said in relation to it, is nothing more than argument upon a purely abstract proposition. The only question legitimately involved in that case was whether the widow v?as entitled to her dower in the .personal estate óf her husband independent of his debts. It is clear, therefore, that all there said in regard to the Tights of the heir to enter into the possessión of and control the lands and slaves is mere dicta of the judges, and consequently is not entitled to the character and authority of a judicial sentence. But the same doctrine is recognized in the case of Morrill et al. vs. Menifee's administrators (5 A. R. p. 629), where the question of the right of possession is directly and broadly presented. In this case, Howard and others as administrators of Nimrod Menifee, sued Boyer and Morrill for the possession of a lot of land in Lewisburg, alleged in the declaration to have belonged to their intestate, and to which they claimed right of possession generally as his administrators. The Court sitting as a jury, found for the plaintiffs, and judgment was pronounced accordingly. The evidence produced by the plaintiffs was, title in their intestate, and possession by the defendant, when suit commenced. This Court reversed the judgment of the Circuit Court, upon the ground that the Court had decided that an administrater could maintain an ¿ction of ejectment against the tenant in possession. That this is the law of that case will of course be conceded, but we feel constrained from a sense' of duty and our own clear convictions to depart from the doctrine there laid down as not being warranted by a fair and legitimate construction of the Statutes from which it is confessedly drawn. The administrator, by the 71 sec. of the administration law is authorized, if his intestate died “leaving a crop ungathered or in an unfinished state so that the estate would suffer loss from the want of care and additional labor” until the meeting of the Court of Probate, to procure such labor to be performed as may be indispensable to the saving such crop, and the Court of Probate may, in such cases, au-thorise such further labor to be performed as the interest of the estate may require, and all sums of money paid for any such labor, if approved by the Court, shall be allowed as expenses of administration. This we think clearly shows the rights of the administrators to the possession of the land in cultivation at the death of the intestate; because it being made his duty to enter upon and cultivate the soil, if the interest of the estate demands it, the performance of his duty constitutes him the actual possessor thereof, for such time at least as may be necessary to complete the cultivation of the crop and preserve it until it is fully matured, severed from the land and taken away: and the 139 sec., which provides that until the widow’s dower be apportioned the Court shall order such sum to be paid to her out of the hire of 'the slaves, and the rent of the real estate, as shall be in proportion to her interest in the slaves and the real estate, appears to us to imply most clearly the right of the administrator to the rents and profits of the real estate as well as the hire of the slaves, which is expressly given to him by the 70th section; because it cannot be reasonably doubted that in directing such payment to be made to the widow, the law contemplates that it shall be made by the administrator, and thus enjoins upon him a legal duty, and at the same time, unless he is entitled to the possession both of the slaves and real estate, withholds from him the power necessary to enable him to perform it; for it surely cannot be contended that he may lawfully lease the lands and receive the rents without having either the possession or right of possession therein; and yet such is indispensable to the performance of his duty. These provisions of law certainly indicate clearly that the administrator has an interest in and right to the possession of the lands of his intestate. But there are other provisions which appear to us to establish his right conclusively. The 72d sec. declares that “ all improvements made on the public lands of the United States by a testator or intestate, shall be assets in the hands of the executor or administrator, unless the same may have been disposed of by will:” and the 145th section enacts that lands and tenements shall be assets in the hands of every executor or administrator for the payment of the debts of the testator or intestate.” Now while it is perfectly manifest that the law of descent and distribution casts the inheritance upon the heir, subject to the payment of debts and the widow’s dower, it is equally clear that the executor or administrator is the legal representative of the whole estate of the deceased, not taken by the widow as dower, and for the support of herself and family, for the special purpose of collecting and preserving it, and satisfying the personal obligations of his testator or intestate, all of which the law malíes it his duty to perform, if the estate is sufficient therefor, and to distribute the residue if any. And it cannot be doubted, that the whole of the real estate exclusive of dower is charged with the debts of the intestate; and therefore, in the absence of other legal authority, we consider it clear, upon well established legal principles; that the principle would carry with it all incidental rights attached to it, of which character we deem the rents and profits; and although the law does not in express terms, declare that the administrator shall have the possession of lands, yet if the lands are, as the Statute explicitly declares they shall be, unconditionally and unqualifiedly, assets in his hands for the, payment of debts, to make them entirely and completely answerable from,the death of the intestate, the administrators must, of necessity, have their possession from the heir until debts are satisfied; otherwise the creditors would lose the intermediate rents and profits, which we cannot believe it was designed should go to the heir, while the estate out of which they spring, is subject to the claims of creditors.” This is substantially the argument of the Chief Justice in his dissenting opinion in the case of Morrill et al. vs. Menifee's administrators, and we fully concur in the principles there stated. We consider the proposition clear and incontrovertible that although the law casts the descent of lands and slaves upon the heir, yet he is not entitled to the possession of either imtil the debts due from the estate are all paid and the administration fully closed and determined. We are therefore of opinion that the entire decree of the Circuit Court in relation to the widow’s dower is right and proper, and ought to be affirmed, but that portion decreeing the other two-thirds to the heirs of the said Menifee, is erroneous, and consequently ought to be reversed. The sixth error assigned is, that the Circuit Court decreed that the said Mary E. Menifee, as the wife and widow of said Nimrod Meni-fee, deceased, was, and is entitled to dower in and out of the slaves of which the said Nimrod Menifee died seized; not only against his heirs at law and the distributees of his estate, but also his creditors. The point made here was fully discussed and determined in favor of the decree of the Circuit Court whilst we were passing upon the first assignment. The doctrine is there fully discussed and settled, and we entertain no doubt of its being strictly correct. Wé conceive it wholly unnecessary therefore to reinvestigate it in this place. The seventh error complained of is, that the Circuit Court decreed that the said Mary E. Menifee was by law entitled to dower of and in the issue and increase bom after the death of her husband the said Nimrod Menifee, and after the institution of this suit, of certain female slaves of which her said husband died seized. Upon the principle already enumerated we conceive that there cannot exist a doubt as to the strict’ propriety of this portion of the decree of the Circuit Court. The widow’s dower is predicated upon the idea of a lien created by law on the property of the husband by virtue of the marriage. If it attaches by way of lien upon the mother, it is clear and we" think incontrovertible that it operates in the same way upon the issue, though born after the death of die husband. If the mother had fallen to the lot of the widow upon the assignment of dowpr, and the issue had been subsequently born, it is not to be questioned but that the widow would have been entitled to the offspring. We are unable to discover any difference in principle between the two cases. Her right accrued at the death of her husband, and though her proportion of the negroes was not set apart and designated by an actual assignment, yet her title was clear and fixed and would consequently attach itself in tire same proportion to the issue, the instant it came into being. The eighth error charged is that the Circuit Court decided and decreed that the slave Amelia, in the proceedings mentioned, of which the said Nimrod Menifee died seized, was not the property of said Ninlrod, and did not upon his death pass to, or vest in either his heirs, or the administrators aforesaid, and is not, in any way, assets in the hands of the latter, nor subject to his debts. The response of Mrs. Menifee to the interrogatory of the administrators of her husband, is substantially as follows: that by the will of 'her deceased father, his slaves were bequeathed to her mother during her natural life, and the girl referred to in the interrogatory was sent from Kentucky by her mother, in the care of Dr. Menifee, to her sister, Mrs. Ball, who lives near Lewisburg, to assist and wait upon Mrs. Ball; that after the girl came out here she was unhealthy and was still so; and that during the Doctor’s life time she was sometimes taken to his house to be administered to, but that since his death she had generally been with Mrs. Ball, though sometimes with respondent; that said girl did not belong to said Nimrod, at the time of his death, or before, nor Is she subject to his debts, or to distribution, as she was advised. The value of the girl slie supposed to be about four hundred dollars, and her annual hire about forty dollars. In addition to the answer of Mrs. Menifee it was also argued by the parties that the negro girl mentioned in the answer of Mason, Howard and Menifee was devised by a Mr. Dunn to his Avife for life, and then to complainant, Mary E. Menifee, the said Dunn being her father. The testimony introduced by the appellants touching the title of the negro girl, does not conflict in the slightest manner with the answer of Mrs. Menifee. The whole purport of' it is that Doct. Menifee brought her from Kentucky; that ho had her most of the time in his possession, and that lie might by possibility have paid taxes upon her. This might all be conceded, and yet it could not even raise a fair presumption against the truth of the answer. If the girl was devised to her mother during her natural life, and she was still living, it is very dear that any act of Doct. Menifee, even taken in the strongest possible light, could not vest a legal title in him. We,are therefore satisfied that the negro girl Amelia constituted no part of the estate of the intestate, and that the decree in regard to her was right and proper. The ninth error charged is, that it appears by the record that the said Mary E. Menifee, in her bill of complaint has united and joined rights of action which, by law and the rales of pleading and practice in Courts of Chancery, cannot lie joined in one bill of complaint or petition, and therefore, by the adjudication, decision, and decree of said Circuit Court, has obtained partition of certain lands held in joint tenancy during her coverture by her husband, the said Nimrod Meni-fee and one David Thompson, and obtained dower of and in such portion of the lands so held in joint tenancy, as are by said decree set apart and decreed to the heirs at law of her said husband, to be held by them.. If the widow is entitled to dower in the individual estate of her deceased husband, we apprehend there could be but little diversity of opinion upon the subject of jurisdiction. The law abhors multiplicity of suits, and it is.clear that in order to afford the widow full and complete relief, in case she had the right, it was absolutely necessary to join the heirs of Thompson, and to obtain a decree for a division of ilic joint property. According to the law, as it anciently stood, it was necessary that the husband should have had seizin of tlic land in severally at some time during (be marriage, to entitle the wife to dower. No title to dower attached on a joint seizin. The mere possibility of flic estate being defeated by survivorship prevented dower. The old rule went so far as to declare, that if one joint tenant aliened his share, his wife should not be endowed, notwithstanding the possibility of the other joint tenant taking by survivorship was destroyed by the severance, because the husband was never sole seized. The6iAsec. of chap. S2of the Revised Code declares that* “all survivorships of real and personal estate are forever abolished.” It is clear that under this Statute the first reason assigned why the widow is not dowable of that portion of her husband’s real estate, which is held jointly with another, cannot prevail, and we think that the second, if not expressly, is at least impliedly negatived and destroyed, by our Statute, by which it is provided that the widow shall be endowed of the third part of all (he land whereof her husband was seized, of an estate of inheritance at any time during the marriage, unless the same shall have been relinquished in legal form. It is not denied but that the intestate was seized either in law or in fact of the joint estalc, or that it is an estate of inheritance. This Statute is certainly broad enough to embrace all estates of inheritance in lands, whether the seizin be joint, or several; and this being the case, the widow is clearly entitled to her dower. The tenth error assigned is, that by the record it appears that the' said Mary E. Menifee exhibited her said bill of complaint,, or petition for dower, of the estate of the said Nimrod Menifee, her deceased husband, in the Circuit Court aforesaid, and that said Court took cognizance and proceeded thereupon to decree to her dower of, and in said estate, whereas, by the law of the land, the exclusive cognizance of such bill of complaint or petition for dower, is vested in the Court of Probate. It is unnecessary to discuss the merits'of this assignment here, as the question of jurisdiction has already been examined and settled in a previous part of this opinion. The eleventh and last error charged is, that the said Mary E. Men-ifee,. by her bill of complaint, seeks the recovery of dower in and out of lands, of which her husband, the said Nimrod Menifee, died seized, a portion of which are situate in the county of Conway, and an-oilier portion thereof in the coiufííy of Perry, consisting of separate and distinct tracts of land lying in each of said counties; whereas, by law, dower in lands situated in a county other than that in which the petition is exhibited, cannot be recovered, decreed or assigned thereupon. This point has, also, been settled, when we were upon the question of jurisdiction. Upon a full and patient examination of every point raised by the record, wc are clearly of opinion that the decree herein rendered by the Circuit Court is erroneous and ought to be reversed.